**MOTOROLA, INC., Plaintiff–Appellant,**

v.

**INTERDIGITAL TECHNOLOGY CORPORATION, Defendant/Cross– Appellant.**

Nos. 96–1408, 96–1428.

United States Court of Appeals, Federal Circuit.

July 30, 1997.

Rehearing Denied Aug. 26, 1997.

Robert G. Krupka, Kirkland & Ellis, Chicago, IL, argued for plaintiff-appellant. With him on the brief were Jay I. Alexander, Washington, DC, Linda S. Resh and Jeffrey D. Mills, Chicago, IL. Of counsel on the brief were Roger H. Dusberger and Michael Stolarski, Motorola, Inc., Schaumburg, IL.

George P. McAndrews, McAndrews, Held & Malloy, Ltd., Chicago, IL, argued for defendant/cross-appellant. With him on the brief were Lawrence M. Jarvis, Gregory C. Schodde, Sharon A. Hwang, and Krista S. Schwartz.

Before ARCHER, Chief Judge, PLAGER, and RADER, Circuit Judges.

RADER, Circuit Judge.

In this patent infringement action, Motorola, Inc. (Motorola) and Interdigital Technology Corporation (ITC) cross-appeal the judgment of the United States District Court for the District of Delaware. After trial, a jury found all twenty-four of ITC's asserted claims invalid and not infringed. As to three of those claims, the district court found the jury's verdict of invalidity lacking evidentiary support and accordingly granted judgment as a matter of law (JMOL) in favor of ITC. *See Motorola, Inc. v. Interdigital Technology Corp.*, 930 F.Supp. 952, 986 (D.Del.1996). In all other respects, the district court entered judgment for Motorola on the jury verdict. *See id.* The district court denied Motorola's request for attorney fees under 35 U.S.C. § 285 (1994). *See id.* On appeal, this court finds that the jury's verdict of invalidity on two other asserted claims lacks the support of substantial evidence and, thus, reverses the judgment on those claims. As to the remainder of the district court's judgment, this court discerns no error. Accordingly, the judgment is affirmed-in-part and reversed-in-part.

## I.

### A.

This case involves digital wireless telephony and six patents owned by ITC. Those patents are U.S. Patents Nos. 4,675,863 (the '863 patent), 4,817,089 (the '089 patent), 4,921,705 (the '705 patent), 5,121,391 (the '391 patent), 5,022,024 (the '024 patent), and 5,119,375 (the '375 patent). All six patents derive from a single parent application, filed on March 20, 1985. The patents have identical written descriptions and drawings.

In general, these patents relate to a digital wireless telephony system with two basic elements—a "base station" and a plurality of "subscriber stations." The base station is a stationary unit that connects the wireless system into the land-tied public telephone network. The plurality of subscriber stations are remote units that may be fixed or movable. In the case of the accused products, the subscriber stations are portable cellular telephones.

The base station described in the patents provides an interface between the public telephone network and the plurality of remote subscriber stations by coordinating the transmission and receipt of radio frequency (RF) transmissions. Each transmission carries, between the base station and the subscriber stations, digital data representing the telephonic voice conversations. The base station has multiple antennae for transmitting and receiving these RF transmissions on many discrete frequencies, or channels.

A particularly important detail of these patents is the method and apparatus for sharing a single radio frequency for communications between the base station and multiple subscriber stations. Ordinarily, the base station would use a single radio frequency for each subscriber station. However, the scarcity of radio frequencies in most geographic areas makes this limitation problematic. The patents describe a particular method for reducing this problem called time division multiple access (TDMA).

TDMA is a method that splices together digital data strings from several phone calls into a single stream of data for transmission over a single RF channel. These patents describe a TDMA system for transmitting four separate phone calls over a single RF channel by repeatedly chopping each call signal into short blocks of digital data and splicing those blocks (in sequence) into a unitary digital signal. The unitary signal has a short burst of data from the first phone call, followed by a burst of data from the second call, and so forth until the sequence is complete and repeats. Thus, each burst, or time slot, contains data from a different one of the four phone calls being transmitted. This unitary signal is then converted into an RF signal and broadcast on a single RF channel. The four subscriber or receiver stations tune to that single frequency. Each subscriber station receives the entire unitary signal, but separates out and uses only data from those time slots corresponding to its phone call. In this way, the claimed inventions conserve available RF frequencies.

Briefly, the two primary prior art references cited by Motorola describe systems substantially related to ITC's claimed systems. The Kinoshita (1981 Japan) prior art reference [1] describes a mobile communications system with a "base station" and "mobile units." The system uses a TDMA scheme to share frequencies among multiple communications signals. Similarly, the 1983 NEC prior art reference [2] describes a "re-mote area subscriber radio telephone system" that uses a TDMA scheme to share frequencies among multiple telephone signals.

## B.

This case began on October 8, 1993, when Motorola sued ITC for a declaration of non-infringement and invalidity of all six of ITC's patents. ITC counter-sued Motorola for infringement of the same patents. Before trial, ITC abandoned its claim that Motorola infringed the '391 patent and the '024 patent, and narrowed its asserted claims to twenty-four specific claims from the four remaining patents. Thus, at issue in this case are: the '863 patent (claims 1–6 and 10); the '089 patent (claims 1, 6–9, 11, 12, and 15); the '705 patent (claim 1); and the '375 patent (claims 91, 133, 162, 178, 213, 218–19, and 224). Before the district court, ITC contended that Motorola infringed (directly, by contributory action, and by inducement) these claims by its participation in the manufacture, use or sale of four cellular phone systems: United States Digital Cellular (USDC); Japanese Digital Cellular (JDC); Groupe Special Mobile (GSM); and Mobile Integrated Radio System (MIRS).

The district court held a jury trial on infringement, invalidity and damages issues presented by ITC's twenty-four claims and Motorola's four accused systems. After a seventeen-day trial, the jury returned a unanimous verdict in favor of Motorola, finding all twenty-four claims not infringed and invalid. The jury issued a twenty-six page special verdict.

ITC filed a motion for JMOL on the grounds that the jury determinations on infringement and validity were unsupported by substantial evidence. In the alternative, ITC sought a new trial because of certain alleged flaws in the trial procedure. Also, Motorola filed a motion seeking an award of attorney fees on the grounds that the case was "exceptional."

1. K. Kinoshita et al., *A Digital Mobile Telephone System Using TD–FDMA Scheme*, Denshi Tsushin Gakkai Ronbun Shi, v. J64–B, no. 9, pp. 1016–23 (1981) (the Kinoshita (1981 Japan) prior art reference).

2. *Digital Remote Area Subscriber Radio Telephone System (Digital RSS System)*, NEC Corporation, Sales Brochure (June 1983) (the 1983 NEC prior art reference).

In an eighty-two page opinion, the district court denied both parties' post-trial motions, except that it granted ITC's motion for JMOL on the validity of three claims. *See Motorola*, 930 F.Supp. at 986. In particular, the judge found inadequate evidentiary support for the jury's verdict that claims 8, 9, and 11 of the '089 patent were invalid. As to the other twenty-one asserted claims, the district court set aside some of the jury's specific findings, but sustained the verdict of invalidity on at least one ground for each of those claims. The attached Appendix summarizes the district court's invalidity judgment. The district court also sustained the jury's verdict of non-infringement for all twenty-four claims.

Motorola filed this appeal contesting (1) the district court's grant of JMOL of non-obviousness of claims 8, 9, and 11 of the '089 patent, and (2) the district court's denial of Motorola's motion for attorney fees. ITC filed a cross-appeal contesting (1) the district court's refusal to grant a new trial in light of various trial tactics employed by Motorola, and (2) the district court's denial of JMOL on the validity of the remaining patent claims. ITC did not appeal the judgment of no infringement.

## II.

### A. JMOL ON CLAIMS 8, 9, AND 11 OF THE '089 PATENT

■ This court reviews the district court's grant of JMOL by reapplying the JMOL standard. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 975, 34 USPQ2d 1321, 1326 (Fed.Cir.1995) (*in banc*), *aff'd,* — U.S. —, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). After a jury verdict, that standard involves two inquiries. First, the court determines whether substantial evidence supports the jury's express or implied factual findings. Second, the court determines the correctness of any legal conclu-

sions implied in the verdict. *See id.; Perkin–Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893, 221 USPQ 669, 673 (Fed. Cir.1984).

■ The district court's special verdict form asked the jury to decide, *inter alia,* whether Motorola had proven by clear and convincing evidence that any of claims 1, 6–9, 11, 12 and 15 of the '089 patent were obvious. Because the jury answered "yes," the verdict form required the jury to indicate the "specific prior art which renders such claim obvious." The jury listed four prior art references: the Kinoshita (1981 Japan) prior art reference, the Henry & Glance prior art reference,[3] the White patent,[4] and the 1983 NEC prior art reference.

These jury answers create a problem. Specifically, claims 8, 9, and 11 claim various modulation techniques used to convert the digital signals into RF transmissions—claim 8 requires phase shift keying; claim 9 requires multiphase phase shift keying; claim 11 requires four level quadrature phase shift keying. However, none of the prior art references listed by the jury to support its obviousness verdict contains any teaching concerning these modulation techniques. At oral argument, Motorola conceded that, standing alone, these references are legally insufficient to render obvious the claims at issue.

The district court noted that the record contained a reference describing these missing elements. In particular, the Kinoshita (1979) prior art reference [5] describes the various phase shift keying techniques missing from the other prior art references. Dr. Cox, one of Motorola's experts, relied on the Kinoshita (1979) prior art reference for his obviousness analysis. According to the district court, this reference would have provided substantial evidence of obviousness if it had been listed by the jury. Nonetheless,

---

3. P.S. Henry and B.S. Glance, *A New Approach to High–Capacity Digital Mobile Radio,* The Bell System Technical Journal, v. 60, no. 8, pp. 1891–1904 (October 1981) (the Henry & Glance prior art reference).

4. U.S. Patent No. 4,630,257 to Phillip D. White (the White patent).

5. K. Kinoshita et al., *Study on Modulation/Demodulation Methods in TDMA Mobile Communications,* presented at the General Meeting, Communications Section of the Japanese Society of the Electronic Communications, 2098 (1979) (the Kinoshita (1979) prior art reference).

because the references actually listed on the jury's special verdict form did not adequately support the obviousness verdict, the district court granted JMOL.

Legal formalities govern special verdicts. In this instance, those formalities dictate the result correctly reached by the district court. The jury delivered only one verdict—the special verdict. It is that verdict that the district court and, in turn, this court review. *See Wahpeton Canvas Co. v. Frontier, Inc.,* 870 F.2d 1546, 1554, 10 USPQ2d 1201, 1209 (Fed.Cir.1989) ("A special verdict is a compilation of answers *returned.* A motion 'for JNOV' seeks a judgment 'notwithstanding' *that* verdict." (emphasis in original, citations omitted)). To look behind this verdict and hypothesize some general verdict of obviousness other than the jury's specific verdict would open a Pandora's box. A reviewing court simply has no tools to distinguish a jury's inadvertent oversight from a jury's mistaken, though genuinely-held, view. *See Iacurci v. Lummus Co.,* 387 U.S. 86, 87–88, 87 S.Ct. 1423, 1424–25, 18 L.Ed.2d 581 (1967) (pointing out dangers inherent in an appellate court attempting to interpret jury verdict in light of missing findings). In this case, the jury identified four prior art references that are plainly insufficient to render claims 8, 9 and 11 of the '089 patent obvious. The jury's verdict on this point cannot stand.

■ The jury's answers reveal that it may have blindly relied on the instructions contained in the special verdict form, which themselves failed to list the Kinoshita (1979) prior art reference. Motorola, however, did not object to this aspect of the verdict form or otherwise ensure that the verdict form conformed to the proofs and arguments it presented at trial. This court has no legal warrant to correct a party's litigation errors or to review questions not preserved for appeal. *See Neely v. Club Med Management Servs., Inc.,* 63 F.3d 166, 200 (3d Cir.1995) (when a party fails to object to the form and language of a special verdict form before the court charges the jury, the party's objections are waived); *see also* Fed.R.Civ.P. 51 ("No party may assign as error the giving or the

failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict. . . ."); 9A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2508, at 191 (1995) ("The appellate court will not consider a defect in the questions put to the jury by the district court in the absence of an objection.").

The record contains another reference, the Hiyama prior art reference,[6] that Motorola contends also supplies the missing elements. However, the special verdict instructions included this article among the prior art references on which Motorola relied for its obviousness case during trial. Specifically, the form indicated that Motorola's obviousness contentions relied in part on "other articles discussing the NEC system," a group of references that indisputably includes the Hiyama article. The jury's decision not to list the Hiyama article, even though the jury instruction generically referred to that article, is an unassailable indication that this prior art reference played no part in the jury's determination of obviousness. Again, this court declines to infer a permissible jury verdict based on the Hiyama article where the verdict actually delivered is clearly infirm.

Motorola argues that, even without the Kinoshita (1979) or Hiyama prior art references, the record shows that one skilled in the art could supply the missing phase shift keying elements. However, this argument suffers the same affliction as Motorola's main argument. It is simply not supported by the verdict. The jury did not indicate that it was relying on the knowledge of one skilled in the art as a source of substantive content. This court cannot merely infer such a reliance. Accordingly, this court affirms the district court's grant of JMOL that Motorola failed to prove invalid claims 8, 9, and 11 of the '089 patent.

**B. MOTOROLA'S REQUEST TO HAVE THE CASE DECLARED "EXCEPTIONAL"**

■ The district court may, in "exceptional" cases, award reasonable attorney fees to

---

6. T. Hiyama et al., *Digital Radio Concentrator System (DRCS),* NEC Research & Development, No. 76 24–36 (1985) (the Hiyama prior art reference).

the prevailing party. 35 U.S.C. § 285. The decision whether to award fees is a two-pronged inquiry that requires, first, a factual finding that the case is "exceptional" and, second, a discretionary decision to award fees. *See Reactive Metals & Alloys Corp. v. ESM, Inc.*, 769 F.2d 1578, 1582, 226 USPQ 821, 824 (Fed.Cir.1985). This court reviews the factual determination for clear error and the discretionary determination for abuse of discretion. *See id.* at 1583; *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1186, 33 USPQ2d 1823, 1833 (Fed.Cir.1995).

■ Motorola based its request for fees on alleged "egregious" attorney misconduct. As a general matter, a trial court may impose sanctions for a party's "[l]itigation misconduct and unprofessional behavior." *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1574–75, 38 USPQ2d 1551, 1558 (Fed.Cir. 1996) (remanding case to district court for consideration of whether parties' conduct was so vexatious that case may be deemed exceptional). In this case, the district court specifically considered the argument that ITC's egregious conduct made the case exceptional. The court concluded that ITC's conduct was poor. The district court, however, declined to award fees to Motorola because its conduct was nearly as bad. Additionally, the court noted that the substantive positions urged by both parties were, for the most part, meritorious, not frivolous. The district court did not find the case exceptional.

This court detects no clear error in the district court's fact finding. The trial judge is better able to assess the conduct of parties appearing before it than is this court. Questions of misconduct often involve the tone and tenor of advocacy, rather than the literal words of the advocate. In such instances, a cold printed record cannot fully convey the aspects of conduct that a trial court might find egregious. Thus, this court is careful to avoid substituting its assessment of facts for those of the judge who experienced them firsthand. *See Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1582, 24 USPQ2d 1401, 1420 (Fed.Cir.1992) (deference is due trial judge, "who had the opportunity to observe those intangibles missing from the appellate record"). Motorola points to no additional facts overlooked by the judge, nor does it identify any reason why this court should reweigh the facts already considered by the district court. Under these circumstances, this court declines to second-guess the trial judge.

Citing *Sensonics,* Motorola argues that this court may remand the case to the district court to reconsider a denial of attorney fees notwithstanding the discretionary nature of the ultimate award of fees. In *Sensonics,* however, this court remanded to the district court because it had not considered vexatious litigation tactics as a possible basis for finding an exceptional case. 81 F.3d at 1574–75 ("[T]he district court did not discuss whether there were actions of bad faith sufficient to meet the criterion of 'exceptional case' and to warrant the award of attorney fees."). In this case, by contrast, the district court fully considered the parties' litigation tactics and conduct and found them not to create an exceptional case. Moreover, even if the district court had found the case exceptional, it would have enjoyed considerable leeway to deny fees in light of Motorola's own litigation misconduct. *See id.* at 1575 ("Indeed, the court may consider the litigation actions of *both sides* in connection with § 285.") (emphasis added). Under these circumstances, this court will not require the district court to revisit an issue it has already considered. The district court's denial of attorney fees under § 285 is affirmed.

## C. ITC'S MOTION FOR A NEW TRIAL BASED ON MOTOROLA'S TRIAL TACTICS

■ This court tests a district court's denial of a motion for new trial by the abuse of discretion standard. *See Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1367, 21 USPQ2d 1321, 1326 (Fed.Cir. 1991). "That question turns on whether an error occurred in the conduct of the trial that was so grievous as to have rendered the trial unfair." *DMI, Inc. v. Deere & Co.*, 802 F.2d 421, 427, 231 USPQ 276, 280 (Fed.Cir.1986).

■ ITC alleges prejudicial error in the following specific events: (1) Motorola prejudiced the jury with references to the specter of lost American jobs, injunctions against

Motorola's sale of cellular phones, and higher cellular phone costs; (2) the district court improperly allowed Motorola to compare its accused products to ITC's commercial embodiment and to use a "generic prior art" demonstrative exhibit; and (3) Motorola's activities so prejudiced the jury that it ignored ITC's "substantial evidence of infringement." This court finds no abuse of discretion in the district court's denial of a new trial.

At the outset, this court notes that ITC did not properly preserve its right to protest some of these matters by objecting at trial. The record shows that ITC objected to some of the "job loss" comments, to the commercial embodiment point, and to the "generic prior art" exhibit, but otherwise, ITC did not object to the these alleged abuses. Accordingly, the propriety of record evidence to which ITC did not timely object is effectively beyond appellate review. *See Caisson Corp. v. Ingersoll–Rand Co.,* 622 F.2d 672, 681 (3d Cir.1980) ("[A] party may not seek a new trial on the basis of objections to evidence not brought to the court's attention at the original trial." (quoting *Belmont Indus., Inc. v. Bethlehem Steel Corp.,* 512 F.2d 434, 438 (3d Cir.1975))).

The record shows that Motorola implied that a loss in this suit might cause the United States to lose jobs to Japan. For example, ITC points to the following excerpt from Motorola's opening statement to the jury:

The evidence will show [Motorola] started out as a very small company. But it was successful. It came out with good products. And it was successful. And it got to the point that it was the largest cellular telephone company in the United States. It made cellular phones. *It made cellular telephones so well that it gave jobs to people here in the United States* to make these cellular telephones to be sold not only here, but we sell [them] in Europe, and *something that is almost unheard of in this country, they are sold in Japan.* They are made here and sold there.

So Motorola felt a duty. Certainly it was looking out for its own interests. This is an important part of Motorola's business. *[If] Interdigital has its way, Motorola will have to stop making digital cellular tele-*

*phones. Stop. The people that are making them will have to stop going to work. The people that are selling them will have to stop selling them.* That is what they want. That is what they ask for.

Trial Transcript, pp. 192–93 (emphasis added in ITC's appellate brief). ITC also points to a few passages in the trial transcript where Motorola's witnesses or lawyers referred to American competitiveness in connection with Motorola's commercial and technical operations. Also, Motorola made occasional reference to its domestic and international operations and sales, chiefly because of the international character of some of the accused products.

This court has reviewed the statements of which ITC complains and finds that they range from innocuous to slightly improper, with most of them being somewhat ambiguous. For the most part, they seem to be the sort of irrelevant deviations that any seventeen day trial will inevitably yield. *Cf. Glasser v. United States,* 315 U.S. 60, 83, 62 S.Ct. 457, 471, 86 L.Ed. 680 (1942) ("The trial was long and the incidents relied on by petitioners few. We must guard against the magnification on appeal of instances which were of little importance in their setting."). This court finds it highly doubtful that such isolated irrelevancies are "so grievous as to have rendered the trial unfair" to ITC. *DMI,* 802 F.2d at 427. The trial judge, who heard these comments in their full context, did not discern any central prejudice to the trial. This court declines to remove that determination from the trial judge's discretion. *See Fineman v. Armstrong World Indus., Inc.,* 980 F.2d 171, 207 (3d Cir.1992) ("We recognize that the trial judge has considerable discretion in determining whether conduct by counsel is so prejudicial as to require a new trial. Because the trial judge was present and able to judge the impact of counsel's remarks, we defer to his assessment of the prejudicial impact." (citations omitted)); *see also Glaros v. H.H. Robertson Co.,* 797 F.2d 1564, 1573, 230 USPQ 393, 398 (Fed.Cir.1986) ("Trial courts have the right and duty to manage proceedings before them to insure both expedition and fairness, and must be

granted a wide discretion in carrying out that duty.").

The record also shows that ITC itself elicited some of the statements of which it now complains. Thus, even if ITC had properly objected to each allegedly improper statement at the time of its utterance and given the district court the first opportunity to consider these allegations (which it did not), this court would not likely impose its own judgment on a matter so closely related to the district court's control of its own proceedings. *See Fineman,* 980 F.2d at 207 ("In matters of trial procedure such as that involved here, the trial judge is entrusted with wide discretion because he is in a far better position than we to appraise the effect of the improper argument of counsel.") (citations omitted); *Glaros,* 797 F.2d at 1573.

ITC also relies on allegedly erroneous evidentiary rulings made by the district court. In particular, ITC argues that the district court should not have allowed Motorola to compare ITC's commercial embodiment (called the UltraPhone) with the accused device. However, this court's review of the record reveals that Motorola did not compare the two commercial devices element-by-element. Rather, it made a few passing references to the size of the UltraPhone as compared to Motorola's hand-held cellular phones (to make the point that UltraPhone was not really portable) and called the two "apples" and "oranges." Moreover, the jury instructions properly cautioned the jury not to compare commercial embodiments to determine infringement. Finally, as Motorola points out, it was ITC that raised the Ultra-Phone issue and dwelled on it for some time during trial. In light of this overall record, a few passing references to the size of the UltraPhone in comparison to the accused products do not warrant a new trial. *See DMI,* 802 F.2d at 427 (noting that court must look at the conduct of the trial as a whole, including jury instructions, to determine whether an error has rendered the trial unfair).

ITC also contends that the trial judge erred by allowing Motorola to use a "generic prior art" exhibit. Here again, however, the record shows that Motorola did not use the "generic prior art" exhibit as a substitute for real prior art. Rather, it used the generic prior art as a demonstrative exhibit that allowed the experts to summarize and explain the components found in each prior art reference. The overall record shows that Motorola presented a rigorous comparison of the claims to the accused products and to the prior art references. The use of a demonstrative exhibit to facilitate this presentation does not constitute improper evidence. To the extent that ITC contends that the exhibit tended to oversimplify disputed issues, effective cross-examination is the remedy for that objection.

ITC also seeks a new trial on the basis of the jury's verdict in favor of Motorola. A new trial is warranted if the verdict is against the "clear or great weight of the evidence." *See Standard Havens,* 953 F.2d at 1367. However, the district court found that this verdict was not against the great weight of the evidence and ITC does not challenge that finding *per se.* Rather, it argues that Motorola's misconduct so prejudiced the jury that the jurors rejected ITC's "substantial evidence of infringement." Suffice it to say that ITC's aggregation of its various complaints does not make them any stronger than they were individually. ITC presents no grounds requiring a new trial.

Finally, ITC argues that the jury's lop-sided verdict is, itself, evidence that the jury was operating under passion, not reason. According to ITC, the jury could not have construed the claims so broadly as to be invalid without necessarily construing them to cover the accused products. The district judge expressly addressed this argument and answered it anecdotally. Record testimony permitted the jury to conclude that the compression means or step, which appears in some form in each asserted claim, covered the adaptive predictive coding (APC) compression method taught by the prior art, but did not simultaneously cover the vector sum excited linear predictive (VSELP) method used in the accused devices. The district court properly noted that this testimony alone, if credited, was sufficient to reconcile the jury's allegedly inconsistent findings.

In sum, this court is not persuaded by any of ITC's arguments about the impropriety of Motorola's trial conduct in this case. This court does not say that tactics such as those employed by Motorola could never warrant a new trial, only that the district court's refusal to grant such a remedy in this case is not an abuse of discretion. The district court's well-reasoned denial of ITC's motion for a new trial is affirmed.

## D. ITC'S REQUEST FOR JMOL OF VALIDITY ON THE REMAINING CLAIMS

As set out above, this court reviews the district court's denial of JMOL by reapplying the JMOL standard. *See Markman,* 52 F.3d at 975. That standard requires the court first to determine whether substantial record evidence supports the jury's express or implied factual findings and then to determine whether the legal conclusions implied in the verdict are correct as a matter of law. *See id.*

ITC contends that it was entitled to JMOL on the issue of validity on all its asserted claims because Motorola did not present substantial evidence of anticipation or obviousness. For each of the twenty-one remaining claims (all asserted claims other than claim 8, 9 and 11 of the '089 patent), the district court's judgment of invalidity is based on a jury verdict of obviousness. *See* Appendix (attached), summarizing the district court's invalidity judgment. For some of the claims, the judgment is also based on a jury verdict of anticipation. *Id.* To the extent that this court finds substantial evidentiary support for the obviousness verdicts, it need not consider the question of whether the claims are also anticipated. Thus, this court addresses ITC's arguments only to the extent required to dispose of each claim.

### 1. *ITC's General Challenges To The Invalidity Verdicts*

On this appeal, ITC lodges three general challenges to the jury's findings of obviousness. Specifically, ITC argues that: (1) The Kinoshita (1981 Japan) prior art reference, on which the jury relied for each of its obviousness verdicts, is not enabling; (2) the

district court improperly ignored evidence of secondary considerations in each of its obviousness determinations; and (3) no substantial evidence supports the jury's implicit finding of a suggestion to combine prior art references for the various obviousness verdicts. These challenges affect each obviousness verdict, so that if any of them is credited, all the obviousness verdicts must fall. However, as set out below, this court finds no merit in the challenges.

■ **Enablement of the Kinoshita (1981 Japan) prior art reference.** ITC's first argument is that the Kinoshita (1981 Japan) prior art reference cannot anticipate or render obvious any of the asserted claims because the reference is so vague that it is not enabling.

■ "In order to render a claimed apparatus or method obvious, the prior art must enable one skilled in the art to make and use the apparatus or method." *Beckman Instruments, Inc. v. LKB Produkter AB,* 892 F.2d 1547, 1551, 13 USPQ2d 1301, 1304 (Fed.Cir. 1989). However, ITC did not raise this argument in its post-trial motions before the district court. This court's consideration of objections first lodged on appeal is severely restricted. *See Biodex Corp. v. Loredan Biomedical, Inc.,* 946 F.2d 850, 862, 20 USPQ2d 1252, 1261 (Fed.Cir.1991) (refusing to review the sufficiency of evidence supporting a jury verdict unless the alleged deficiency is first raised in some post-trial motion in the district court).

The district court properly instructed the jury that it must find prior art references enabling. Record evidence supports the jury's implicit determination that the Kinoshita (1981 Japan) prior art reference is enabling. First, the reference itself provides block diagrams at a level of detail similar to those contained in the patent. In addition, Dr. Cox testified extensively about his understanding of the article, from which the jury could have concluded that one skilled in the art understood the reference in sufficient detail to practice it. Under these circumstances, the record was sufficient to entitle the jury to conclude that the reference was enabling.

**1472**

■ **Secondary indicia of nonobviousness.** ITC next argues that the district court improperly overlooked evidence of secondary considerations suggesting non-obviousness in each of its obviousness determinations. Indeed, the district court's opinion does not mention secondary considerations. However, the district court properly instructed the jury on these matters. Apparently, the jury rejected ITC's arguments and evidence on the secondary indications of non-obviousness. In reaching an obviousness determination, a trial court may conclude that a patent claim is obvious, even in the light of strong objective evidence tending to show non-obviousness. *See Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 768–69, 9 USPQ2d 1417, 1426–27 (Fed.Cir.1988). The district court did not err by its refusal to second-guess the jury on this conclusion.

■ **Suggestion to combine references.** ITC's final challenge to all the obviousness verdicts is that Motorola did not present substantial evidence from which the jury could have found a suggestion to combine the various prior art references needed for its obviousness findings. However, there is no requirement that the prior art contain an express suggestion to combine known elements to achieve the claimed invention. Rather, the suggestion to combine may come *from* the prior art, as filtered through the knowledge of one skilled in the art. *See In re Jones*, 958 F.2d 347, 351, 21 USPQ2d 1941, 1943–44 (Fed.Cir.1992) ("there must be some suggestion for [combining prior art references], found either in the references themselves or in the knowledge generally available to one of ordinary skill in the art"); *In re Nilssen*, 851 F.2d 1401, 1403, 7 USPQ2d 1500, 1502 (Fed.Cir.1988) (rejecting applicant's argument that the prior art must contain an express suggestion to combine); *see also In re Oetiker*, 977 F.2d 1443, 1448, 24 USPQ2d 1443, 1446–47 (Fed.Cir.1992) (Nies, C.J., concurring) ("[W]e must look at the obviousness issue through the eyes of one of ordinary skill in the art and what one would be presumed to know with that background.").

■ Without belaboring the details, the record contains evidence from which the jury could have found a suggestion to combine the various references cited by Motorola. Motorola's prior art references were related and involved similar problems and issues. Moreover, Motorola's experts testified in detail about the teachings of each reference and the motivations that one skilled in the art might have to combine the various references. For example, Dr. Cox specifically described the considerations of cost and simplicity that might motivate one skilled in the art to use the so-called "half-duplex" mode of operation (described in the White patent and the Henry & Glance prior art reference) in connection with the telephonic systems described in the other prior art references. *See* Trial Transcript, pp. 3121–24. This court concludes that the record evidence supports the jury's implicit finding of a suggestion to combine the various references and that, except as noted below, each obviousness determination was correct as a matter of law.

**Conclusion.** Thus, this court finds the jury's obviousness determinations to be generally permissible, except to the extent discussed below, where specific claim limitations are missing from the prior art references upon which the jury relied.

**2. ITC's Challenges Concerning Specific Claim Limitations**

In addition to the general challenges to the invalidity verdicts discussed above, ITC also argues that the prior art references relied upon by the jury for its anticipation and obviousness findings are missing some specific claim limitations altogether.

■ **Synchronization means limitation.** This court turns first to the jury's finding, and the district court's corresponding judgment, that the Kinoshita (1981 Japan) prior art reference anticipated claim 1 of the '705 patent. ITC argues that this holding cannot stand because the prior art reference lacks the claimed "means to determine synchronization." The claimed means must "utiliz[e] a code for exchanging the current state of the connection [between the base station and the subscriber stations], the link quality, and the power and timing adjustments." '705 patent, claim 1. Indisputably, the Kinoshita

(1981 Japan) prior art reference does not describe the use of a code having these four functions.

Motorola does not point to, nor does this court discern, anything in the Kinoshita (1981 Japan) prior art reference that specifically addresses this inadequacy. Instead, Motorola relies, as did the district court, on the trial testimony of Dr. Cox:

> The [Kinoshita (1981 Japan)] reference does discuss the need for synchronization. That is one of the issues that Kinoshita was concerned with and discusses in the paper. So that is in there, yes.

Trial Transcript, p. 3140. The district court recognized that Dr. Cox's testimony lacked specificity, but it reasoned that ITC must suffer the consequences of its failure to expose that deficiency through cross-examination. Because ITC did not address the issue before the jury, the district court concluded that the jury was entitled to credit Dr. Cox's unrebutted testimony and conclude that the prior art reference contained all claimed elements.

■■■■ The district court's holding misapprehends the rigors of anticipation. For a prior art reference to anticipate a claim, the reference must disclose each and every element of the claim with sufficient clarity to prove its existence in the prior art. *See In re Spada*, 911 F.2d 705, 708, 15 USPQ2d 1655, 1657 (Fed.Cir.1990) ("[T]he [prior art] reference must describe the applicant's claimed invention sufficiently to have placed a person of ordinary skill in the field of the invention in possession of it." (citations omitted)). Although this disclosure requirement presupposes the knowledge of one skilled in the art of the claimed invention, that presumed knowledge does not grant a license to read into the prior art reference teachings that are not there. An expert's conclusory testimony, unsupported by the documentary evidence, cannot supplant the requirement of anticipatory disclosure in the prior art reference itself. *See Jamesbury Corp. v. Litton Indus. Prods., Inc.*, 756 F.2d 1556, 1563, 225 USPQ 253, 257–58 (Fed.Cir.1985) (granting JNOV of validity where the record as a whole, including the apparent content of the prior art reference, did not support an ex-

pert's conclusory testimony of anticipation); *cf. W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1554, 220 USPQ 303, 314 (Fed.Cir.1983) (reversing trial court's judgment of invalidity because expert's testimony of inherent anticipation, unsupported by the evidentiary record, cannot serve as a basis for a finding of anticipation).

Without any disclosure of the four particular synchronization functions in the Kinoshita (1981 Japan) prior art reference, the jury's anticipation verdict cannot stand. Likewise, because no combination of prior art references for obviousness describes the four particular functions recited in the claim, the jury's obviousness verdict must also fall. Thus, this court reverses the district court's denial of JMOL on the invalidity of claim 1 of the '705 patent.

■■■ **Subscriber station limitation.** ITC next argues that no substantial evidence supports the jury's implicit finding that the "mobile unit" in the Kinoshita (1981 Japan) reference meets the claimed "subscriber station" limitations in the '863 patent (claims 3–6) and the "send/receive unit" limitation in the '375 patent (claims 162 and 178). The prior art reference recites a "mobile unit," but does not describe the contents of the mobile unit. It does, however, describe the contents of the "base unit."

The district court properly found substantial evidentiary support for the anticipation verdict in the trial testimony of Dr. Cox. Dr. Cox testified that a person with ordinary skill would understand Kinoshita's "mobile unit" to be "compatible with the parameters of [Kinoshita's] base station." If the jury credited Dr. Cox's testimony, which it was entitled to do, it could have concluded that the undescribed contents of the mobile unit would mirror the fully-described contents of the base unit. On this basis, the record supplies adequate evidence to support the jury's implicit finding that the Kinoshita (1981 Japan) prior art reference disclosed the claimed "subscriber station" or "send/receive unit."

Moreover, an entirely independent basis also supports the district court's ruling on these claims. The jury also found these

claims obvious. For that verdict, the jury relied on another prior art reference presented by Dr. Cox, the Kinoshita (IEEE) prior art reference.[7] That reference indisputably contains a full description of the contents of Kinoshita's mobile unit. Thus, the jury did not ignore the "subscriber station" and "send/receive unit" limitations.

■ **Half-duplex limitation.** Finally, ITC argues that substantial evidence does not support the jury's verdict of obviousness on claim 178 of the '375 patent because the prior art references identified by the jury do not disclose the claimed half-duplex operation. Under this mode of operation, the send/receive unit (i.e., the subscriber station) sends and receives RF transmissions at different times. The special verdict lists three references on which the jury purportedly relied in finding the claim obvious, the Kinoshita (1981 Japan), Kinoshita (IEEE), and the 1983 NEC prior art references. However, none of these references discloses half-duplex operation. Thus, the obviousness verdict cannot possibly rest on the references listed by the jury.

In reviewing this verdict, the district court mistakenly grouped claim 178 with the claims that the jury invalidated over combinations including the White patent and the Henry & Glance prior art reference, both of which *do* describe half-duplex operation. If the special verdict had listed these additional prior art references, this court could sustain the verdict. As delivered, however, the record does not support the jury's verdict. Under the same reasoning that impelled this court to deny Motorola's request to read missing references into the jury's verdict on the '089 patent, this court declines to read references into the jury's special verdict on the '375 patent. ITC is entitled to JMOL of validity on claim 178 of the '375 patent.

### III.

In accordance with this opinion, this court affirms the district court's grant of JMOL in favor of ITC on claims 8, 9, and 11 of the '089 patent. This court reverses the district court's denial of JMOL in favor of ITC with regard to the validity of claim 1 of the '705 patent and claim 178 of the '375 patent. In all other respects, this court affirms the district court's thorough and careful reasoning in denying JMOL. This court also affirms the district court's denial of Motorola's request for attorney fees and the district court's denial of ITC's request for a new trial.

### COSTS

Each party shall bear its own costs.

*AFFIRMED–IN–PART; REVERSED–IN–PART.*

### APPENDIX
#### Summary Of District Court's Invalidity Judgment

| Patent | Anticipated | Obvious |
| --- | --- | --- |
| **'863 patent**<br>—Cls 1–6, 10 | Kinoshita (1981 Japan) | Combination of Kinoshita (1981 Japan), Kinoshita (IEEE), and 1983 NEC references |
| **'089 patent**<br>—Cls 1, 6–7, 12, 15 | N/A | Combination of Kinoshita (1981 Japan), Henry & Glance, White and NEC 1983 references |
| —Cls 8, 9, 11 | N/A | N/A |
| **'705 patent** | | |

---

**7.** K. Kinoshita et al., *Digital Mobile Radio Telephone System Using TD/FDMA Scheme,* Institute of Electrical and Electronics Engineers Conference Record (International Conference On Communications—June 14–18, 1981) (the Kinoshita (IEEE) prior art reference).

| | | |
|---|---|---|
| —Cl 1 | Kinoshita (1981 Japan) | Combination of Kinoshita (1981 Japan), Kinoshita (IEEE), and 1983 NEC references |
| '375 patent<br>—Cls 91, 133, 162 | Kinoshita (1981 Japan) | Combination of Kinoshita (1981 Japan), Kinoshita (IEEE), and 1983 NEC references |
| —Cl 178 | N/A | Combination of Kinoshita (1981 Japan), Kinoshita (IEEE), and 1983 NEC references |
| —Cls 213, 219 | Kinoshita (IEEE)<br>Adams patent [8] | Combination of Kinoshita (1981 Japan), Adams, White, and Henry & Glance references |
| —Cls 218, 224 | N/A | Combination of Kinoshita (1981 Japan), Adams, White and Henry & Glance references |

---

8.  U.S. Patent No. 4,020,461 to William B. Adams  et al. (the Adams patent).