NEWMAN, Circuit Judge,
concurring- ' in-part, dissenting-in-part.
The sole issue is the award of attorney fees, on application of the Supreme Court’s adjusted standard as set forth in Octane Fitness, LLC v. ICON Health & Fitness, Inc., — U.S. —, 134 S.Ct. 1749, 188 L.Ed.2d 816 (2014) and Highmark Inc. v. Allcare Health Management System, — U.S. —, 134 S.Ct. 1744, 188 L.Ed.2d 829 (2014).
I
In the initial ruling on Romag’s motion for attorney fees with respect to the issue of trademark infringement, the district court applied the Second Circuit’s pre-Oc-'tane Fitness attorney fee standard requiring “evidence of fraud or bad faith.” Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 111 (2d Cir. 2012). I agree with my colleagues that the general adoption by the regional circuits, in trademark cases, of the patent-based attorney fee standard set fortji in Octane Fitness, renders it more likely than not that the Second Circuit would also take this path in trademark cases.
Thus I share the view that remand is appropriate for determination by the district court of whether, on the Octane Fitness standard, attorney fees are warranted for the trademark infringement here found.
II
I do not, however, share my colleagues’ view that the district court abused its discretion in awarding attorney fees with respect to the patent issues.
' The district court observed that Fossil pressed its invalidity theories, including anticipation and obviousness arguments, until the eve of trial,.at which time Fossil seemed to offer assurance that these aspects would not be pursued.' Nonetheless, Fossil did not withdraw either its invalidity defenses or its invalidity counterclaims, maintained its patent expert-on its witness list, and kept “prior art” on its trial exhibit list. I take note of the representations quoted by my'colleagues, but such representations at the eve of trial and after trial had begun were reasonably viewed by the district court as too tardy and too equivocal to negate the assessment of attorney fees.
The district court recognized that withdrawal of. the invalidity counts was not achieved until after trial had begun, when the district court effectively granted Ro-mag’s Rule 50 motion. Tr. Charge Conference, April 1, 2014, 45:3-11, ECF No. 439. As the district court observed, Romag and its witnesses had been required to prepare and to remain prepared on the patent invalidity issues throughout extensive pretrial proceedings and until “the eve of trial.” Dist. Ct. Op. 6.
I do not discern where, or how, the district court abused its discretion, for the district court reasonably observed that this case “stood out from the. others,” in the words of Octane Fitness, concluding that Fossil “aggressively pursue[d] invalidity counterclaims in an attempt to prolong litigation and exponentially increase the cost and risk of pursuing a lawsuit.” Dist. Ct. Op. 7.
*1343 My colleagues nonetheless second-guess the district court’s observations and depart from the required deferential review of discretionary rulings. I respectfully dissent from Part II of the court’s opinion.
A
The standard for award of attorney fees is whether the case “stands out from others with respect to the substantive strength of a party’s litigating position ... or the unreasonable manner in which the case was litigated.” Octane Fitness, 134 S.Ct. at 1756. We review the district court’s action for abuse of discretion. Highmark, 134 S.Ct. at 1747. My colleagues acknowledge this standard and its highly deferential review, yet substitute their interpretation of the events that the trial judge experienced first-hand.
For instance, my colleagues state that “[t]he record establishes that the [invalidity] defenses were withdrawn before trial.” Maj. Op. 1336-37. That is incorrect. The record establishes that the defenses were not withdrawn until after trial had begun, when the district court withdrew them on Romag’s Rule 50 motion. Tr. Charge. Conference, April 1, 2014, 45:3-11, ECF No. 439. Thus Romag was required to prepare, and remain prepared, for these invalidity issues, as the district court observed. Dist. Ct. Op. 6 (“Romag’s decision to continue to present evidence to counter [Fossil’s] invalidity defenses until the claims were formally withdrawn with prejudice was entirely foreseeable.”). . • ■
The district court did not abuse its discretion in imposing attorney fee recovery for this aspect of the litigation, for Fossil persisted in retaining the invalidity defenses and counterclaims for over three years, and repeatedly equivocated as the trial date approached. On the uncertainty and obfuscation that existed, the trial court did not abuse its discretion -in determining that the case was litigated in a manner, that “stands out from others.” Octane Fitness, 134 S.Ct. at 1756.
B
In response to Romag’s complaint, which was filed in December 2010, Fossil pled patent invalidity as an affirmative defense and counterclaimed for a declaratory judgment of patent invalidity. Defs.’ Answer, Affirmative Defenses, & Countercls., Dec. 15, 2010, 6, 8, ECF No. 31. These responses led to extensive preparatory activity by the parties, to attack and defend what the district court referred to as “Ro-mag’s principal business asset.” Dist. Ct. Op; 6. Fossil’s invalidity challenges included an expert report concerning invalidity, expert witness deposition, discovery, the listing of purportedly invalidating prior art, a motion for summary judgment, and other pretrial proceedings. The jury trial was scheduled to start on March 24, 2014.
As the trial date neared, at a court status teleconference on February 12, 2014 Romag pointed out that Fossil’s proposed jury instructions and trial brief did not mention patent invalidity. Romag requested that Fossil declare its intentions regarding its invalidity defenses and counterclaims:
Romag’s counsel: There is nothing in the document ... about patents. When we asked [Fossil’s counsel] in a phone conversation last week in a meet and confer whether they were pursuing any patent defense at all, he refused to answer saying, he’ll determine it at trial.... [1⅞⅛ very difficult to go to trial on a patent case as it is ... and it’s even *1344 more difficult when we don’t even know whether the defendant is putting in a defense. Either they’re putting in one or , they’re not.
Tr. Teleconference, Feb. 12, 2014, 39:7-40:2, EOF No. 324. Romag elaborated on its concerns:
Romag’s counsel: If they are not putting it in, I think we’re entitled to a judgment on the pleadings, particularly on their counterclaim, and.... if they are putting it in, we need to know. We need the experts. We need to be prepared for their response at trial. This is not a guessing game. I think at this point, this goes to trial, we’re entitled to know whether those patent issues are still before the Court or whether they are withdrawn.
Id. at 40:2-11. Fossil’s counsel responded by offering to present Romag with a stipulation later in the week, and the “hope” that some of these issues could be eliminated.
Fossil’s counsel: So I think that I can get something to them by the end of this week and hopefully we can maybe even eliminate some of those issues in some sort of stipulation.
Id, at 41:14-17. Romag continued to press for specificity:
Romag’s counsel: ... but as to the merits of the patent claim, either [Fossil’s] pursuing it or [Fossil’s] not pursuing it, and I don’t see why we're not entitled to know at this late stage whether [Fossil’s] pursuing it or not or whether we have to file a motion.
Id. at 42:10-15.
. The judge asked, if Fossil “intended] to include in [the] stipulation whether [it was] pursuing or abandoning either of [its] invalidity or noninfringement claims.” Id. at 42:16-19. Fossil then requested more time, but made no commitment:
Fossil’s counsel: I would like until next Friday, but I think we might be able to stipulate something along the lines that, you know, if they’re established to be counterfeits, then, you know, we’re not contesting infringement. If they’re—you know, on validity, I don’t know, I have got to re-circle back with all of the defendants, but in my view it’s a $28,000 claim. So I’m sort of in agreement it’s a waste of everybody’s time to litigate it at this point.
Id. at 43:11-20. Fossil’s counsel did not answer either the trial judge’s or Romag’s questions regarding the invalidity claims. This discussion does not support the majority’s conclusion that the trial judge and Romag knew that the invalidity counts were withdrawn.[1] It was already the “eve of trial,” after more than three years of pre-trial proceedings, yet Fossil equivocated.
The panel majority also focuses on the exchange at a further pre-trial conference, held March 5, 2014. On being pressed by the trial judge, Fossil stated that “at this point” it would not assert the invalidity defenses:
Court: ... are the defendants asserting the affirmative defenses to the patent claim of obviousness and prior art?
Fossil’s counsel: At this point, your Honor, we are not going to assert those defenses.
Court: Okay.
*1345 Tr. Pretrial Conference, Mar. 5, 2014, 7:6-12, ECF No. 369. Does “at this point” mean that Fossil could not change its mind at a later point? One cannot fault Romag for uncertainty, given that'Fossil had previously told Romag that Fossil would “determine it at trial.” And despite this exchange, Fossil still did not withdraw the invalidity defenses or counterclaims. The district court recognized the uncertainty, stating “Romag’s decision to continue to present evidence to counter Defendants’ invalidity defenses until the claims were formally withdrawn with prejudice was entirely foreseeable.” Dist. Ct. Op. 6.
The panel majority focuses on the trial judge’s question about the exhibit list at the March 18, 2014 conference, with trial set to start on March 24:
Court: And then there’s several exhibits about prior art that—since we clarified in our last hearing that there’s no invalidity defense being advanced, are they artifacts that aren’t really going to be offered? Let me see if I can find my notes on that.
Tr. Pretrial Conference, Mar. 18, 2014, 155:6-11, ECF No. 370. The exhibits about prior art related to Fossil’s invalidity defenses, yet they remained on the Exhibit list a week béfore the scheduled trial, and the purported withdrawal still had not been implemented. ’ ■
The panel majority also states that a colloquy concerning a motion filed by Ro-mag on March 31, 2014, “indicates that the court and the parties were aware of the invalidity defenses’ withdrawal prior to trial.” Maj. Op. 1337. However, the trial had begun a week earlier. The next day, at the April 1, 2014 charge conference, the district court effectively granted the motion and withdrew Fossil’s invalidity defenses with prejudice:
Court: ... a portion of [Romag’s] motion yesterday was seeking a judgment against the defendant on the invalidity. :The defendants represent that they have withdrawn their Invalidity defense. In the interest of justice, that defense may be withdrawn, but it is withdrawn with prejudice, and therefore, no judgment will enter. But the effect is the same for [Romag].
Tr. Charge Conference, April 1, 2014, 45:3-11, ECF No. 439.
The portions of the record cited by the panel majority do not impugn the district court’s discretion regarding events the trial judge observed first hand. The pleadings, the years of trial preparation, and the vacillation until after trial had begun, all support the district court’s discretion in finding that this case “stands out from others” in the manner of its litigation. Romag was surely required to prepare for trial on the validity issues, including discovery, depositions, experts, etc.
C
In finding an abuse of discretion by the trial judge, the majority has given inadequate countenance to the Court’s guidance in Octane Fitness, that
an “exceptional” case is simply one that stands out from others with respect to the substantive strength of a party’s litigating position (considering both the govérning law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is “exceptional” in the case-by-ease exercise of their discretion, considering the totality of the circumstances.
Octane Fitness, 134 S.Ct. at 1756. The majority also .ignores the Court’s guidance in Highmark; that
*1346 as a matter of the sound administration of justice, the district court is better positioned to decide whether a case is exceptional, because it lives with the case over a prolonged period of time:... [T]he question is multifarious and novel, not susceptible to useful generalization of the sort that de novo review provides, and likely to profit from the experience that an abuse-of-discretion.rule will permit to develop.
Highmark, 134 S.Ct. at 1748-49 (internal quotations and citations omitted).
The district court did not abuse its discretion in the assessment of attorney fees. “Abuse of discretion is a highly deferential standard of appellate review.” Bayer Crop-Science AG. v. Dow AgroSciences LLC, 851 F.3d 1302, 1306 (Fed. Cir. 2017). In matters of judicial discretion, especially with respect to litigation procedures,.the appellate court should exercise restraint in substituting its view for that of the judge who was on the spot. See generally Motorola, Inc. v. Interdigital Tech. Corp., 121 F.3d 1461, 1468 (Fed. Cir. 1997) (“Questions of misconduct often involve the tone and ten- or of advocacy, rather than the literal words of the advocate. In such instances, a cold printed record cannot fully convey the aspects of conduct that a trial court might find egregious. Thus, this court is careful to avoid substituting its assessment of facts for those of the judge who experienced them firsthand.”). This court has long recognized that “[t]he trial judge is better able to assess the conduct of parties appearing before it than is this court.” Id.
No abuse of discretion has been shown, no “definite and firm conviction that a mistake has been made.” Univ. of Utah v. Max-Planck-Gesellschaft Zur Foerderung der Wissenschaften e.V., 851 F.3d 1317, 1322 (Fed. Cir. 2017) (citing Insite Vision, Inc. v. Sandoz, Inc., 783 F.3d 853, 858 (Fed. Cir. 2015)). It is not disputed that Romag, incurred .significant expense and burden in preparing to defend patent validity, much of which could have been spared had Fossil been, more straightforward concerning its litigation intentions. The district court, having observed these tactics, did,not abuse its discretion in its limited award of ’attorney fees. From my colleagues’ contrary ruling, I respectfully dissent.

. This portion of the record does not show that Fossil withdrew its invalidity defenses at this teleconference. Maj. Op, 1336 n,3. However, Fossil stated that it would determine its intentions regarding invalidity "at trial”—it did not withdraw the invalidity defenses before trial, leading to withdrawal by the district court on Romag's motion during trial.