**William T. PORDY and Carberry Corporation, Plaintiffs–Appellants,**

v.

**LAND O'LAKES, INC., Defendant–Cross Appellant.**

No. 03–1182, 03–1202.

United States Court of Appeals, Federal Circuit.

DECIDED: April 30, 2004.

Edmund J. Sease, Principal Attorney, Des Moines, IA, for Plaintiff–Appellant.

Jeffrey D. Shewchuk, Principal Attorney, Eagan, MN, for Defendant–Cross Appellant.

Before SCHALL, GAJARSA, and PROST, Circuit Judges.

PER CURIAM.

William T. Pordy, M.D., and Carberry Corporation (collectively, "Pordy") brought a patent infringement action against Land O'Lakes, Inc. ("Land O'Lakes") in the United States District Court for the Southern District of New York. Following a trial, the jury found Pordy's patent to be infringed and granted damages against Land O'Lakes. The district court granted the defendant's motion for judgment as a matter of law ("JMOL") and reversed the jury's verdict of patent infringement. Pordy appeals this decision. Land O'Lakes cross-appeals, alleging errors in the district court's (1) claim construction; (2) jury instructions on effective filing date; and (3) evidentiary ruling. Because we find that the jury had before it evidence sufficient to support its findings of infringement and willful infringement, we *vacate* the court's grant of JMOL. We *affirm* the district court on the issue of claim construction. Finally, we *reverse* the district court on the issue of effective filing date. Accordingly, we *vacate* the jury's verdict,

and *remand* the case to the district court for trial on the issue of whether, in light of the later filing date, the prior art anticipates the patent-in-suit.

## I. BACKGROUND

### A. The '670 Patent

Dr. William Pordy is the named inventor on the U.S. Patent No. 5,480,670 (the "'670 patent"), which is directed to a low-fat, low-cholesterol, low-calorie coffee creamer composition of all-natural ingredients meant to imitate Half & Half creamers.[1] The patent is assigned to Carberry Corp, a Pordy-owned company. The patent contains nineteen claims. The only claims at issue in this suit are Claims 1 and 19 of the '670 patent. Claims 1 and 19 read as follows:

1. A liquid coffee lightener which *consists essentially of* milk having approximately 8.5% milk solids by weight and 1–3.57% butterfat by weight; 2–12% by weight of additional milk solids added to said skim milk; and a natural fat substitute 03.3[sic]–10% by weight, said coffee lightener having total solids content within the range of 11–28% by weight and a total fat and fat mimetic content to simulate the taste, body, appearance, mouthfeel and organoleptic properties of Half & Half while being substantially lower in fat, saturated fat, and calorie content of and not exceeding the cholesterol content of conventional creamers.

19. A fat free liquid coffee lightener which *consists essentially of* milk having approximately 8.5% milk solids by weight and "B" grams of

---

1. The '670 Patent is a continuation-in-part of Application No. 07/890,803, (the "'803 application") filed June 1, 1992. The '803 application resulted in U.S. Patent No. 5,366,751 (the "'751 patent"), as well as the '670 patent.

butterfat by weight; 2–12% by weight of additional milk solids added to said milk; and an all natural fat substitute 0.3–10% by weight, said coffee lightener having, in a substantially standard 0.5 oz. Serving "V" of approximately 15 mL, total solids content within the range of 11–28% weight and total fat and mimetic content to simulate the taste, body, appearance, mouthfeel and organoleptic properties of Half & Half while being substantially lower in total fat, saturated fat, and calorie content of and not exceeding the cholesterol content of conventional creamers, and wherein the butterfat content "B" and the volume of the serving "V" are related as follows:

$$V \times B = 50$$

Where V is in mL and B is in grams. U.S. Patent No. 5,480,670, cl. 9, ll. 39–49; cl. 10, ll. 37–54.

Before the '670 patent issued, Pordy met with executives at Land O'Lakes' headquarters to discuss his confidential business plan to market his invention. At that meeting, he disclosed the nature and the benefits of his invention. According to Pordy's testimony, Land O'Lakes' executives expressed interest; however, no agreement was reached to purchase either Pordy's business plan or a right to use his invention. Subsequent to the meeting, but before the issuance of the '670 patent, Land O'Lakes entered the creamer market with a new product called "Gourmet Fat

Free Half & Half." The only difference between Pordy's invention and Land O'Lakes' product is the inclusion of titanium dioxide (0.4% by weight) in the latter.

After the issuance of the '670 patent, Pordy filed suit against Land O'Lakes for breach of contract, trade secret appropriation, common law misappropriation, and patent infringement.[2]

B. *Proceedings Below*

The district court held a *Markman* hearing to construe the claims of the '670 patent. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed.Cir.1995) (en banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The court interpreted the transitional phrase "consisting essentially of" as follows:

The phrase "consists essentially of" means that the invention is "open to unlisted ingredients that do not materially affect the basic and novel properties of the invention." *PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1354 (Fed.Cir.1998). The "basic and novel properties" of the invention at issue are its "taste, body, appearance and mouthfeel," Patent '751 at col. 8, ln. 68, in addition to its "whitening ability."

The district court also refused to specifically exclude whiteners containing sugar from the scope of the patent.[3]

The question presented by the district court's construction, therefore, was whether the inclusion of titanium dioxide "materially affect[s] the basic and novel proper-

---

**2.** The trial court also granted summary judgment in Land O'Lakes' favor as to all of Pordy's state law claims in view of the statute of limitations. Pordy only appeals the trial court's JMOL reversing the jury's infringement findings on the '670 patent.

**3.** The court stated that it "declines to rule ... as to what substances in what quantities may

or may not materially affect [the] basic and novel properties of the invention." Thus, according to the district court, a coffee whitener containing sugar is beyond the scope of the patent only if the presence of sugar materially affects "taste, body, appearance and mouthfeel" of the product.

ties of the invention." *PPG Indus.*, 156 F.3d at 1354.

At trial, Pordy submitted the results of an experiment that he conducted comparing his product to that of Land O'Lakes'. The experiment was not carried out in a rigorously-controlled scientific environment. The subjects chosen for these experimental trials were those individuals who happened to walk by the back entrance of Pordy's building on a particular morning. One of the subjects was Pordy's patent attorney.

Pordy prepared two samples containing the ingredients specified in Land O'Lakes' formula for Gourmet Fat Free Half & Half, other than the stabilizers and emulsifiers. Sample One contained 0.4% titanium dioxide, while Sample Two did not. In a double blind study, eleven subjects were asked to comment on the color differences between the two samples as they appeared in coffee. Nine of the eleven subjects could not distinguish between the two samples.

Four other subjects were asked to compare the two samples directly (i.e., not in coffee). Three of the four subjects stated that the samples were the same color. The fourth stated that Sample One (containing titanium dioxide) was slightly lighter than Sample Two. Based on these experiments, Pordy stated at trial that "[i]t was very clear, abundantly clear that [the titanium dioxide] was not material, that it did not affect the composition."

Land O'Lakes argued at trial that the inclusion of the titanium dioxide in its product did indeed materially affect the product's whitening ability. Land O'Lakes' witnesses testified that titanium dioxide is added to coffee whiteners to make the product appear whiter and to increase whitening ability. An executive from Land O'Lakes testified that he used a colorimeter to compare the marketplace sample of Gourmet Fat Free Half & Half to Pordy's bench-top samples with and without titanium dioxide. He further testified that the bench-top sample with titanium dioxide "had the typical color of Fat Free Half & Half" while the bench-top sample without titanium dioxide was "significantly lower in whiteness." He concluded that "titanium dioxide is probably about 80 percent of the appeal of this product to the consumers. That's how important it is."

At the end of submitted evidence, Land O'Lakes moved for summary judgment of non-infringement. The court denied Land O'Lakes' motion by stating:

Well, while again I reiterate for the hundredth time how close I think this particular issue is and I note that only for purposes of the record on appeal, I think when all is said and done that there is enough evidence here, and it is barely enough, but there is enough here from which a reasonable juror could conclude that titanium dioxide was not necessarily material to the color of Land O'Lakes' formula or its mixture, its product.

I cannot conceal how unlikely that seems to me based on all the evidence taking it, if I were to take this, as the finder of fact, but I'm not the finder of fact, and for purposes of this motion, I have to consider the evidence most favorably to the plaintiffs . . . .

And I'm convinced that while this was a fair test and his opinions were received as an expert, so, in the totality of the situation, I will deny the motion.

The jury found that Land O'Lakes' Gourmet Fat Free Half & Half infringed claims 1 and 19 of Pordy's '670 patent. The jury awarded Pordy compensatory damages of $2,578,431 and willfulness damages of $421,569, for a total award of $3

million. Land O'Lakes renewed its motion for judgment as a matter of law and filed a memorandum in support thereof. Land O'Lakes argued that the evidentiary basis was insufficient to sustain the jury's verdict because, *inter alia*, Pordy's evidence failed to show that titanium dioxide does not materially affect the composition of the whitener.

Eleven months after the jury reached its decision, the district court vacated the jury's verdict and entered judgment for Land O'Lakes. In so doing, the district court stated:

> [N]o juror could have reasonably relied upon [the results of Pordy's experiment], given, *e.g.*, that Dr. Pordy had "home-baked" the two key samples, that he gave the test to only eleven subjects (a statistically insignificant number), that he kept no record of the questions put to these subjects (or of whether they were consistent as between subjects), and that, most remarkably, the subjects, consisting of persons who "walked past his back door," included various persons plainly biased in his favor, such as his own patent lawyer.

Pordy timely filed a Notice of Appeal. Land O'Lakes timely served its Notice of Cross–Appeal contesting the district court's claim construction, jury instructions, as well as its evidentiary rulings. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II. *DISCUSSION*

### A. *Standard of Review*

We review a district court's grant or denial of JMOL *de novo* by reapplying the JMOL standard. *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1373 (Fed.Cir.2003). "Factual findings made by the jury in arriving at its verdict are to be upheld unless the party moving for JMOL shows that (when the correct legal standard is applied) there is not substantial evidence to support a finding in favor of the nonmovant." *Markman*, 52 F.3d at 975. Claim construction is a matter of law that we review *de novo*. *Markman*, 52 F.3d at 970–71.

### B. *Judgment as a Matter of Law*

Pordy appeals the grant of JMOL in favor of Land O'Lakes, and argues that there was substantial evidence to support the jury's verdict.

To prevail on a motion for JMOL following a jury trial, the moving party "must show that the jury's findings, presumed or express, are not supported by substantial evidence." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed.Cir.1998) (internal citations and quotations omitted). The burden therefore was on Land O'Lakes to show that Pordy's experiments did not constitute "substantial evidence."

We have noted that "[i]n determining whether the jury's verdict is supported by substantial evidence, 'we must draw all reasonable inferences in favor of the prevailing party, and not make credibility determinations or substitute our view of the conflicting evidence for that of the jury.'" *Eaton Corp.*, 323 F.3d at 1345 (Fed.Cir. 2003) (quoting *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1355 (Fed.Cir.2000)). "Substantial evidence ... means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938).

■ At trial, both parties submitted evidence of tests conducted on their products. Pordy's tests tended to show that titanium dioxide does not alter the whitening ability of his invention, while Land O'Lake's tests tended to show that it does. To be sure,

Land O'Lakes' studies were more sophisticated than Pordy's. While Land O'Lakes used colorimeters, Pordy produced testing samples at home, and tested them on a very small number of subjects, some of whom may have been biased in Pordy's favor. At trial, however, Land O'Lakes did not object to Dr. Pordy's methods, or to his qualifications as an expert witness in the field of coffee whiteners. Having failed to preserve this argument by objecting, Land O'Lakes cannot subsequently attack the court's decision to admit the studies. With Pordy's studies admitted, the only question remaining was their credibility. Land O'Lakes had sufficient opportunity to cross-examine Pordy and to point out the weaknesses in his studies to the jury. The jury in turn was free to credit or not to credit Pordy's veracity and ability to conduct a proper scientific experiment. It chose to believe Pordy. It is not for the court to determine the credibility and veracity of the witnesses and their studies, as these questions are properly reserved for the jury. *Akamai Techs., Inc. v. Cable & Wireless Internet Servs., Inc.*, 344 F.3d 1186, 1192 (Fed.Cir.2003).

The conflicts between Pordy's evidence and Land O'Lakes' evidence was a question of fact for the jury to resolve. *See PPG Indus.*, 156 F.3d at 1355 ("[A]fter the court has defined the claim ... the task of determining whether the construed claim reads on the accused product is for the finder of fact.") We agree with the district court's original conclusion that the issue is a close one. However, because we must draw all reasonable inferences in favor of Pordy, *SIBIA*, 225 F.3d at 1355, we believe that there was substantial evidence to support the jury's finding.

Accordingly, we vacate the JMOL entered by the district court. For the reasons set forth below, *see* Part III.D, *post,* we also vacate the jury's verdict.

## C. Claim Construction

■ Land O'Lakes cross-appeals on the issue of claim construction, arguing that the court below erred in not specifically excluding products containing titanium dioxide and/or sugars. We disagree.

It is well settled that the limiting term " 'consist[s] essentially of' ... represents a middle ground between the open-ended term 'comprising' and the closed-ended phrase 'consisting of.' " *AK Steel Corp. v. Sollac and Ugine*, 344 F.3d 1234, 1239 (Fed.Cir.2003). "In view of the ambiguous nature of the phrase, it has long been understood to permit inclusion of components not listed in the claim, provided that they do not 'materially affect the basic and novel properties of the invention.' " *Id.* (quoting *PPG Indus.*, 156 F.3d at 1354 (Fed.Cir.1998)); *see also In re Janakirama–Rao*, 50 C.C.P.A. 1312, 317 F.2d 951, 954 (1963).

The '670 patent was drawn to a substance meant to whiten coffee and to "simulate the taste, body, appearance, mouthfeel and organoleptic properties of Half & Half while being substantially lower in fat, saturated fat, and calorie content of and not exceeding the cholesterol content of conventional creamers." '670 patent, col. 9, ll. 39–50; col. 10, ll. 36–53. The relevant "basic and novel properties of [Pordy's] invention," *AK Steel Corp.*, 344 F.3d at 1239, are specified in the claims and include: (1) whitening ability, (2) taste, (3) body, (4) appearance, (5) mouthfeel, (6) organoleptic properties, and (7) fat and cholesterol content. The district court, relying on our precedent, correctly identified these properties, and construed the claim accordingly.

■ Land O'Lakes argues that during the prosecution of the '670 patent, Pordy surrendered coffee whiteners that include

titanium dioxide. Land O'Lakes draws that inference from the statement Pordy made during the prosecution comparing his invention to the prior art: "[a]ddition-ally, and most important, Baker et. al. [prior art] requires the addition of a whitening agent (artificial color-titanium dioxide) to produce a product which [sic] has an acceptable appearance."

Statements made during prosecution history may limit the scope of the patent. *See Southwall Techs., Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1576 (Fed.Cir.1995) ("The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution.") However, the clear language of the claims will be limited to exclude an interpretation "only where the accused infringer can demonstrate that the patentee surrendered that interpretation *with reasonable clarity and deliberate-ness.*" *Schumer v. Lab. Computer Sys., Inc.,* 308 F.3d 1304, 1313 (Fed.Cir.2002) (emphasis added; internal citations and quotations omitted).

Land O'Lakes misreads the purpose and the effect of Pordy's statement on titanium dioxide. Pordy's statement differentiating his invention from the prior art highlighted that his formula is sufficiently white *without titanium dioxide,* and that the addition of titanium dioxide would not affect his product. Pordy's statement thus cannot be read as a clear and deliberate surrender of a formulation that simply added titanium dioxide to his formula, precisely because he claims that the addition of titanium dioxide to his product would not alter it in any appreciable way. The district court was correct in refusing to exclude products that contain titanium dioxide from the scope of the '670 patent, *provided* that the addition of this material did not change the whitening ability of the product.

Next, Land O'Lakes argues that the district court erred when it refused to exclude products containing sugar from the scope of the '670 patent. Land O'Lakes makes its argument by quoting the following language from the prosecution history:

> Finally Bookwalter et al. [prior art] teaches a *milk concentrate* produced without an emulsifier but with 3–40% by weight of edible oil and 0–35% by weight of sugar. Additionally, both of these latter ingredients, particularly the ranges noted, are inconsistent with the present invention because the product defined in the claims does not use sugar nor an edible oil *of the type taught in the reference.*

(emphasis added).

Land O'Lakes argues that this language excludes *all* sugars other than lactose (a sugar naturally occurring in milk).

Once again, Land O'Lakes fails to understand our precedent. As explained above, an interpretation of an unambiguous claim is limited by prosecution history only to the extent that the patentee clearly and deliberately surrendered that interpretation. *Id.*

Land O'Lakes' argument gives short shrift to the words that qualify Pordy's statement, "of the type taught in the reference." The reference teaches only sucrose and dextrose. Thus, at most, only products containing those two specified sugars are excluded from the scope of the '670 patent. Furthermore, the Bookwalter reference does not teach a coffee lightener, but rather a milk concentrate product. Given these two facts, we cannot conclude that Pordy clearly and deliberately surrendered an interpretation that would include sugars in the scope of the patent. *Id.*

Additionally, Land O'Lakes' argument suffers from a more fundamental problem.

Land O'Lakes would have us equate "sugar" with any substance that happens to contain sugar, such as corn syrup.[4] Taking this argument to its logical conclusion, Pordy's milk whitener could not contain any milk because milk contains lactose, which is itself a sugar. Land O'Lakes understands that such an argument would be absurd, so it concedes that lactose is not excluded. Unfortunately for Land O'Lakes, there is no principled way to conclude that sugar occurring in milk is covered by the patent, but sugar occurring in corn syrup is not. We decline to hold that "sugar" also includes all products that happen to contain sugar.

We have reviewed Land O'Lakes' other arguments on the issue of claim construction and find them without merit. Accordingly, we find no error and affirm the district court's claim construction.

D. *Effective Filing Date*

■ Land O'Lakes also cross-appeals alleging error in the district court's failure to find that the '670 patent has an effective filing date of November 21, 1994. We agree.

The '670 patent was based on a CIP application filed on November 21, 1994. See footnote 1, *supra.* The original application (the '803 application) was filed on June 1, 1992. The original application disclosed a coffee whitener that contains *inter alia,* 1–2% by weight of butterfat and 0.3–5% by weight of fat substitute. The '670 patent on the other hand requires 1–*3.57%* by weight of butterfat and 0.3–*10%* by weight of fat substitute.

When one files a continuation-in-part application, "matter disclosed in the parent application is entitled to the benefit of the filing date of the parent application."

*Waldemar Link v. Osteonics Corp.,* 32 F.3d 556, 558 (Fed.Cir.1994). "Determination of whether a priority document contains sufficient disclosure under 35 U.S.C. § 112, first paragraph is a question of law." *Id.* We have previously held that to decide whether a continuation-in-part application receives the benefit of an earlier filing date, "a court must examine whether the 'disclosure of the application relied upon reasonably convey[s] to the artisan that the inventor had possession at that time of the later claimed subject matter.'" *Augustine Med. Inc., v. Gaymar Indus., Inc.,* 181 F.3d 1291, 1302 (Fed.Cir.1999) (quoting *Waldemar Link,* 32 F.3d at 558).

Applying the above test, one cannot conclude that the '803 application provided sufficient disclosure for the matter claimed in the '670 patent. Nothing in the '803 application teaches or even hints at the possibility of using higher percentages of butterfat or fat substitute. In addition, Pordy fails to point to any evidence indicating that one of skill in the art would have understood the disclosure of the '803 application to suggest that the inventor, at that time, also had possession of the ranges claimed in the '670 patent. As a matter of law therefore, the '670 patent cannot claim the earlier filing date of the '803 application, and is thus limited to the filing date of November 21, 1994. Accordingly, we reverse the ruling of the district court denying Land O'Lakes motion for judgment as a matter of law on this issue.

■ The question remains, however, whether any products produced after June 1, 1992, but before November 21, 1994, would make the '670 patent anticipated, as claimed by Land O'Lakes.[5]

---

4. Land O'Lakes' product does not use sugar. Instead it uses corn syrup that contains sugar.

5. Land O'Lakes argues that Kemps' Coffee Right is one such product.

Anticipation is a question of fact. *Merck & Co., Inc. v. Teva Pharms. USA, Inc.,* 347 F.3d 1367, 1369 (Fed.Cir.2003). A question of fact is initially best resolved by the district court. On remand, Land O'Lakes must prove anticipation by "clear and convincing evidence." *See State Contracting & Eng'g Corp. v. Condotte Am., Inc.,* 346 F.3d 1057, 1067 (Fed.Cir.2003) ("A party seeking to establish that particular claims are invalid must overcome the presumption of validity in 35 U.S.C. § 282 by clear and convincing evidence.") If Land O'Lakes succeeds in showing that Pordy's patent is anticipated, the patent is to be held invalid and judgment is to be entered for Land O'Lakes. Should Land O'Lakes fail to prove anticipation by clear and convincing evidence, Pordy is entitled to judgment and the damages awarded to him by the jury. *See Moore's Federal Practice* § 38.43[4][c] (3d ed. 2004) ("[T]he trial judge continues to be bound by a jury's finding even if its verdict is vacated, so long as the underlying factfinding is not impugned."); *see also Artis v. Hitachi Zosen Clearing Inc.,* 967 F.2d 1132, 1138 (7th Cir.1992) (same). For this reason, we vacate the jury verdict and remand the case to the district court for a new trial on the issue of anticipation. The district court is to reinstate the jury's verdict if Land O'Lakes fails to prove anticipation.

## III. *CONCLUSION*

For the foregoing reasons, we affirm the district court's claim construction, and reverse on the issue of effective filing date. We vacate the JMOL and the jury verdict and remand the matter to the district court for a new trial limited to the issue of anticipation.

No costs.